IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1570 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed a Motion to Quash several eleventh-hour subpoenas the government recently served. [Dkt. ## 79, 82]. The government was given until close of business on Friday, February 12th to file a response, but did not meet that deadline, and offered no excuse for failing to do so. [Dkt. #86]. Given that failure, and for the following reasons, the plaintiff's motion [Dkt. #79, 82] is granted *to the extent discussed in this opinion.*[1]

In addition, the government filed another motion for another extension of discovery to take depositions, serve even more subpoenas, and conduct quite a bit of additional discovery. Indeed, the government's motion lists about five pages of desires – [Dkt. #85, at 3-7] – at 7 p.m. on the last business day before the close of discovery. [Dkt. #85]. From a practical perspective, judging by what has gone on before, there is very little chance at all that the government will complete the laundry list of tasks it has left until now in the additional 50 days it asks for. For the following

---

[1]As for the witness, the government did not disclose until February 8th – a government employee the government claims not to have known about until then – rather than bar the witness, and as the government does not object, an extension of the discovery deadline will be allowed for the limited purpose of plaintiff deposing the witness. But this should be done promptly, in the ordinary meaning of that word.

reasons, that motion [Dkt. #85] is denied.

"When parties wait until the last minute to comply with a deadline, they are playing with fire." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996); *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 947 (7th Cir. 2020)(decrying last-minute requests for extensions); *DR Distributors, LLC v.21 Century Smoking, Inc.*, 2015 WL8777633, at*2 (N.D.Ill.2015). Of course, eleventh-hour requests for extensions often bear on the legitimacy of the request. *See Connecticut Gen. Life Ins. Co. v. Chicago Title & Trust Co.*, 690 F.2d 115 (7th Cir. 1982); *Hare v. Comcast Cable Commc'ns Mgmt.*, LLC, 564 Fed.Appx. 23, 24 (4th Cir. 2014); *Franklin v. Howard Brown Health Ctr.*, 2018 WL 4590010, at*1 (N. D. Ill. 2018); *G&G Closed Circuit Events, LLC v. Castillo*, 2016 WL3551634, at *7 (N. D. Ill. 2016). "Leaving everything to the last minute while knowing about a deadline for . . . months can and should have serious consequences." *Sapia v. Bd. of Educ. of City of Chicago*, 2019 WL 661468, at *1 (N.D. Ill. Feb. 19, 2019). The eleventh-hours tactics the government has employed presuppose that a Judge will simply do whatever it wishes, *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *4 (N.D. Ill. June 30, 2016). At the very least, one expects some explanation from a party for filing a motion for an extension of time the night before the deadline expires. The government offers none and, indeed, indicates it knew it would move for an extension about three weeks ago, "at the end of January." [Dkt. #85, at 7]. This type of motion is extremely frustrating for a court. The eleventh-hour filer, offering no excuse for its delay, gives the distinct impression that he or she is in charge of the court's docket and scheduling. That is simply not the case. *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 174 (N.D. Ill. 2018)("The parties do not "own" the discovery schedule, and cannot suspend or extend discovery in accordance with their own desires."); *Jones v. UPR Prod.,*

*Inc.*, 2016 WL 6518652, at *1 (N.D. Ill. 2016)("Lawyers and parties do not own the discovery schedule. There is an overriding public interest in the prompt resolution of legal disputes. That interest transcends the immediate interest of the parties ...."). Given all this, the motion for an additional 50-day extension for unlimited purposes [Dkt. #85] is denied.

That brings us to the subpoenas. While the event at issue here occurred in a prison, it amounts to a slip-and-fall case. The plaintiff, an amputee with one leg, fell while attempting to negotiate a "curb" on the entry to a shower stall. [Dkt. #50, Pars. 8, 13]. Yet, the case is moving into its fourth year. Discovery began back at the end of 2019 [Dkt. #51, at 2].

But, as the last-minute motion for an extension of time suggests, the government has a pattern of waiting until the last minute. Again, discovery in this case began well over a year ago. [Dkt. #51, Par. K]. On January 16, 2020, the parties indicated they would complete discovery by September 30, 2020 [Dkt. #51, Par. K], and Judge Gettleman set that as the deadline on February 20, 2020. [Dkt. #54]. By April 24, 2020, Covid orders had extended that deadline to December 16, 2020. [Dkt. ##59, 64]. Just two weeks before that deadline, on December 2nd, the government filed a motion for another extension, asking for an additional 60 days to complete, among other things, depositions. [Dkt. #74, Par. 5]. The motion was granted, making the new deadline February 16, 2021. [Dkt. #77]. By December 8th, those depositions the government referred to still had not been scheduled and the court advised them to schedule them *promptly*. [Dkt. # 77]. That was one year and nine months into the case, and after eleven months of discovery.

Suffice it say, the government did not act promptly. With less than two weeks left before the final discovery deadline, the government issued a raft of deposition subpoenas on February 2nd, serving them on the 8th, and noticing four depositions, one after the other, for February 15th, the day

before discovery closed.²

In addition, a fifth deposition, of Dr. Boron, was noticed for February 19th. The government should have know about this witness from medical records produced back in March 2020. On February10, 2021, the government then issued four subpoenas for documents – to St. Mary's of Nazareth Hospital, Cermak Hospital, Stroger Hospital, and StatRad (a radiology services vendor used by the BOP) – all with return dates of February 24.

Oddly enough, the government submits that it has been "up front" with the court about needing even more time that it asked for back in early December. How so? Because it filed another motion for an extension of the discovery deadline on the night of February 12, 2021. [Dkt. #86, at 9]. The court fails to grasp how filing a last-minute motion for an extension – February 12th happened to be the preceding business day before the close of discovery on February 16th – is being "up front." In any event, the Brownlee subpoena and the document subpoenas are quashed as they clearly violate Standing Order 16.1. that Standing Order provides, "with exacting specificity that a deadline for discovery means that discovery must be completed by that date." *Finwall v. City of Chicago*, 239 F.R.D. 494, 498-99 (N.D. Ill. 2006). *See also RTC Indus., Inc. v. Fasteners for Retail,*

---

² Subpoenas issued February 2, 2021 and served February 8:

February 15, 4 p.m. deposition: Allen Iroegbulem, disclosed in Plaintiff's initial R26(a)(1) disclosures on March 2, 2020

February 15 at 2 p.m. deposition: Antonio Johnson, who is in Defendant's custody, was disclosed in Plaintiff's interrogatory answers on August 19, 2020.

February 15, at 12 p.m. deposition: Roy Brownlee, who is in Defendant's custody, was disclosed in Plaintiff's interrogatory answers on August 19, 2020.

Issued and served February 2 for deposition February 15 at 10 a.m.: 8 Dr. Lim, who treated Plaintiff after the fall at Cook County Hospital, was disclosed as a fact witness by Plaintiff on March 2, 2020

*Inc.*, No. 17 C 3595, 2020 WL 215750, at *6 (N.D. Ill. Jan. 14, 2020); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 214 (N.D. Ill. 2013); *In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527, 531 (N.D.Ill.2005)(collecting cases). *See also Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 241 (7th Cir.1994)(court did not abuse its discretion by granting defendants a protective order where plaintiff failed to request discovery until nine days before the cutoff, violating Standing Order).

As for the other subpoenas, they were *technically* noticed before the close of discovery. However, none of them were issued or served 14 days before the desired deposition, which is the benchmark for reasonableness. *See Franklin v. Howard Brown Health Ctr.*, 2018 WL 4590010, at *2 n.1 (N.D. Ill. Sept. 25, 2018)(" Fed.R.Civ.P. 45(d)(2)(B) suggests that 14 days is the benchmark for time for compliance."); *Tri Investments, Inc. v. Aiken Cost Consultants, Inc.*, 2011 WL 5330295, 1 (W.D.N.C. 2011); *AngioScore, Inc. v. TriReme Medical, Inc.*, 2014 WL 6706898, 1 (N.D. Cal. 2014)(9 days inadequate); *Thomas v. IEM, Inc.*, 2008 WL 695230, at *3 & n. 10 (M.D. La. 2008) (15 days was inadequate, especially considering the Christmas holiday fell within those 15 days); *Hernandez v. City of Corpus Christi*, 2011 WL 2194254, at *1 (S.D. Tex. 2011) (quashing subpoena duces tecum that gave 10 days for compliance); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. 2005)(ten business days deposition notice unreasonable in complex litigation); *Mann v. Univ. of Cincinnati*, 824 F.Supp. 1190, 1202 (S.D.Ohio), aff'd, 152 F.R.D. 119 (S.D. Ohio 1993), aff'd, 1997 WL 280188, 5, n.5 (6th Cir. 1997)(requiring compliance with subpoena in less than fourteen days deemed unreasonable). Moreover, the chances of all four depositions going off without a hitch on February 15th – they involve prisoners – are not great. And, of course, that means they would likely have to be rescheduled for after the close of discovery. The nagging question is why? The government has a couple of answers.

First, it informs opposing counsel and the court that counsel is very busy. [Dkt. #86, at 9]. That, of course, is no excuse for what the government has done here. *See Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chicago*, 543 F. App'x 591, 594 (7th Cir. 2013); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir.2012); *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir.2006) ("[I]t is widely accepted that neglect due to a busy schedule is not excusable."). I am not unsympathetic to counsel's busy schedule, with "eight cases in active fact discovery, not including cases at other stages of litigation." But judges are also busy, as is plaintiff's counsel, who has been *recruited* to represent the plaintiff. [Dkt. #19]. Yet, plaintiff's counsel is expected to set aside an entire day for the government's last minute depositions. As for the court's schedule, the government noticed four of the depositions for a Federal Holiday. If issues arose – and they often do, especially with prisoner depositions – the court being closed that day, no intervention or resolution would be available. The whole business was poorly planned and poorly timed: it most assuredly did not have to be that way.

The other explanation the government provides us is that the depositions were scheduled for the last minute somewhat intentionally:

> The reason the United States issued the subpoenas in the last few weeks prior to filing her extension motion is because the undersigned wanted to demonstrate to the court that she had at least started the process to depose these relevant individuals, even if she needed additional time to complete these depositions. The intention was to show diligence, not a disrespect for the rules.

[Dkt. #86, at 8]. Again, it is difficult to grasp the government's reasoning. The irony is that the government's explanation of how last minute subpoenas demonstrate diligence comes in a response brief that was filed after the deadline. The court really should quash the remaining subpoenas as well. But, instead, it will reopen discovery for the limited purpose of reserving those subpoenas,

6

with proper 14-day notice, and conducting them. Before doing so, the government is ordered to confer with plaintiff's counsel telephonically immediately pursuant to Rule 37.2 to establish a firm date for the remaining discovery permitted by this Opinion. Counsel should immediately file a schedule reflecting the agreed upon dates for the depositions which must be concluded no later than March 31, 2021.

Additionally, plaintiff must *immediately* fill out and provide the necessary consent form for documents from the Social Security Administration. Upon completion of that task, counsel must file an appropriate confirmation that this has been done. I understand the frustration of the plaintiff and his counsel. The government did not provide this form until about two weeks before the close of discovery, despite learning that these documents might be significant when plaintiff amended his Complaint in July of 2019. [Dkt. #41, Par. 11; 85, at 5-6 ("Plaintiff now contends that Lawrence's abilities were different—that he was unable to walk up and down stairs and should have been restricted from doing so. The Social Security Administration documents are relevant because they may lead to information describing Lawrence's disability and what activities of daily living were affected by his disability prior to his fall."). Still, it is not much of an inconvenience to provide the form.

## CONCLUSION

For the reasons discussed in this Opinion plaintiff's Motion to Quash [Dkt. ##79, 82] is granted but only to the extent discussed in this Opinion. In addition, the defendant's Motion for an additional 50-day extension for unlimited purposes [Dkt. #85] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/16/21